1. CONSTITUTIONAL LAW (§ 48*)—DETERMINATION OF CONSTITUTIONAL QUES-
TIONS—PRESUMPTIONS OF CONSTITUTIONALITY—SURROGATE'S COURTS.
   The Surrogate's Court being a court of first instance will assume the
constitutionality of a statute, not declared unconstitutional by the ap-
pellate courts.
   [Ed. Note.—For other cases, see Constitutional Law, Cent. Dig. § 46;
Dec. Dig. § 48.*]

2. TAXATION (§ 895*)—TRANSFER TAX—APPLICATION OF FUNDS BY EXECUTOR.
   Transfer Tax Law (Laws 1896, c. 908) § 220, as amended by Laws 1908,
c. 310, provides that when the property of a resident decedent, or the
property within this state of a nonresident decedent, transferred by will,
is not specifically bequeathed or devised, such property shall, for the
purposes of the article, be deemed to be transferred proportionately to
and divided pro rata among all the general legatees and devisees named
in the will, including all transfers under a residuary clause in such will.
Held, that an executor may not elect to appropriate assets in New York
to the payment of legacies, exempt or taxable at the minimum rate, leav-
ing the payment of legacies that would be taxable at a higher rate to be
paid from assets outside the state.
   [Ed. Note.—For other cases, see Taxation, Dec. Dig. § 895.*]

<hr>

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

**3.** TAXATION (§ 895*)—TRANSFER TAX—APPRAISAL OF ESTATE—DEDUCTION OF DEBTS.

In appraising the property within this state of a nonresident decedent for the transfer tax, there should be deducted the amount of debts due the creditors in New York, also such an amount of the debts due creditors not domiciled in the state of New York, funeral expenses, and commissions, as will bear the same proportion to the whole amount of debts as the New York assets, after deductions for debts to resident creditors, New York commissions and New York administration expenses, bear to the entire estate wherever situated.

[Ed. Note.—For other cases, see Taxation, Cent. Dig. § 1719; Dec. Dig. § 895.*]

Proceedings for settlement of the estate of Josephine E. S. Porter. From an order fixing the transfer tax, the executor appeals. Order sustained in part, and reversed in part.

Thomas Mills Day, for executor.
Edward H. Fallows, for State Comptroller.

THOMAS, S. By chapter 310 of the Laws of 1908 the transfer tax law (Laws 1896, c. 908) was amended by the addition to section 220 of a new subdivision, which reads as follows:

"Whenever the property of a resident decedent or of a nonresident decedent within the state, transferred by will, is not specifically bequeathed or devised, such property shall, for the purposes of this article, be deemed to be transferred proportionately to and divided pro rata among all the general legatees and devisees named in said decedent's will, including all transfers under a residuary clause in such will." Tax Law, subd. 3, art. 10, as incorporated in Consol. Laws, c. 60.

On May 30, 1908, or twelve days after this amendment went into effect, the decedent died a resident of the state of Connecticut. She left a will which contained the following provision:

"Second. I give and bequeath to my granddaughter Agnes Sheffield Porter the sum of one hundred fifty thousand dollars ($150,000), and to my granddaughter Josephine Earl Porter the sum of one hundred fifty thousand dollars ($150,000), provided that each of my said grandchildren shall live to reach the age of twenty-one (21) years. Said amounts are to be paid at the discretion of my executor, either in cash or in such securities of my estate at their market value at the time of payment as my executor may select."

In subsequent parts of her will the decedent directed the above bequests to be held by the Connecticut Trust & Safe Deposit Company, her executor and trustee, in trust for her said granddaughters until they should respectively reach the age of 21 years, when the granddaughters were to receive the fund, the devolution of which in case of their death before that age was limited in a certain manner not now material. She bequeathed money legacies to 38 legatees of the 5 per cent. class, all of whom, with one exception, reside outside of this state, and she gave her residuary estate in equal parts to her two granddaughters. She also directed that "all succession, legacy, inheritance and transfer taxes" should be paid out of her general estate. The decedent owned no real property in this state, and her entire personal estate amounted to $384,744.84, whereof securities of the

---

appraised value of $66,662.80 constitute the property within this state. The executor filed with the appraiser affidavits showing that it had elected to apply the securities in this state to the payment of the legacies given in the clause of the will above quoted to the decedent's granddaughters, and that it had transferred such securities to itself as trustee for that purpose; but the appraiser reported the estate in New York as transferred proportionally to and divided pro rata among all the legatees named in the will, and from the order made upon his report the executor appeals.

One of the grounds of the appeal raises the question of the constitutionality of the amendment. This court being a court of first instance will assume it to be constitutional. The purpose of the amendment plainly is to take from executors the power which under some circumstances they had before its enactment, and especially foreign executors, to defeat the tax or reduce its amount by electing to devote particular parts of the estate to the satisfaction of particular legacies. The exercise of this power, besides diminishing the revenue of the state, was productive of much confusion and delay in the final adjustment of the tax, for executors were often slow to make their election, and not infrequently they failed to do so until after the appraiser had filed his report and after the order fixing the tax had been made. The amendment will tend to facilitate and simplify the administration of the law. The present case being within its purview the property will "be deemed to be transferred" in the manner prescribed by it, unless such property is embraced in the exception now to be considered.

The amendment contains an exception excluding from its operation "property specifically bequeathed or devised." It is contended by the executor that when it selected the securities in New York to pay the two legacies in question, such securities became in effect as much "specifically bequeathed" as if named directly in the will, and this by virtue of the discretion which the will gave to the executor to pay such legacies either in cash or in securities belonging to the decedent's estate. With this I do not agree. The will fixed the character of the legacies as general legacies. The authority given to the executor was merely a discretion as to the manner of payment, and it did not and could not change the character of the legacies or convert the securities selected for their payment into property "specifically bequeathed or devised."

The executor also appeals from the refusal of the appraiser to allow any deduction on account of debts presumably owing to creditors without the state, funeral expenses and administration expenses, including commissions in respect to property without the state. It is now insisted on behalf of the State Comptroller that as debts owing by a nonresident decedent to New York creditors must be deducted in toto from New York assets, under the decision in Matter of Grosvenor, 124 App. Div. 331, 108 N. Y. Supp. 926, affirmed 193 N. Y. 652, 86 N. E. 1124, no further deductions are allowable except for New York administration expenses and New York commissions. No decision refusing in toto the deductions in question has yet been made. On the contrary, it has been held that such deductions are to be made upon

a pro rata basis. In the Estate of Alice Key Browne, my memorandum, published in the New York Law Journal of May 25, 1907, reads as follows:

"Estate of Alice Key Browne. The appeal was taken in time. The appraiser acted correctly in prorating debts due to creditors not domiciled in this state and funeral expenses (Matter of Doane, N. Y. Law Journal, March 12, 1903). He was also correct in prorating the annuities or gifts of income which are directed by the will to be paid generally out of the income of the residuary estate given by the will to the executor in trust. The executor, however, is entitled to have all expenses of administration, including the commissions allowable to him in the domiciliary jurisdiction, also prorated, and for this purpose the matter will be remitted to the appraiser if counsel are unable to agree upon the amount. Settle order on notice."

The executor appealed from each and every part of the order made pursuant to this memorandum, except the part which adjudged the appeal to have been taken in time. In the Appellate Division the order was affirmed without opinion (Matter of Browne, 127 App. Div. 941, 111 N. Y. Supp. 1111), and in the Court of Appeals (195 N. Y. 522, 88 N. E. 1115) the appeal was dismissed with the following memorandum:

"Per Curiam. While we would have no difficulty in disposing of this appeal by affirming the order on the merits if the appeal was properly before us, we are of the opinion that the order appealed from is interlocutory, and therefore the appeal must be dismissed, with costs."

The exact basis upon which the pro rata allowances should be made was, however, not litigated or determined in that case. In view of the fact that the rule established in the Grosvenor Case, supra, for the deduction of New York debts is very liberal to the estates of nonresident decedents, I think the deduction to be made for debts owing to nonresident creditors, mortuary expenses, commissions on property without the state and other administration expenses in respect to such property, should be in the proportion which the net New York estate (after all deductions are made for debts owing to resident creditors, New York commissions and New York administration expenses) bears to the entire or gross estate, wherever situated. The trustee's commissions, which are the subject of the fourth ground of appeal, will be allowed pro rata to the extent here indicated. As to the debts alleged to amount to $3,302.58, it does not appear whether they are owing to domestic or foreign creditors, and, unless the parties agree as to this, further proof will have to be taken by the appraiser.

The order is sustained as to the first, second, and fifth grounds of appeal, and as to the third and fourth it is reversed to the extent indicated above. Settle order on notice.

Decreed accordingly.